**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
DENNIS SWEENEY,                             :
                                            :
                         Plaintiff,         :       Civil Action No.:
                                            :
          v.                                :       **COMPLAINT**
                                            :
BDO USA, LLP and JANET BERNIER, in her      :       **Jury Trial Demanded**
individual and professional capacities,     :
                                            :
                         Defendants.        :
------------------------------------------------------------ X

      Plaintiff Dennis Sweeney hereby alleges against Defendants BDO USA, LLP ("BDO" or

the "Company") and Janet Bernier (together, "Defendants") as follows:

## PRELIMINARY STATEMENT

      1.     Plaintiff Dennis Sweeney was a highly successful Managing Director at BDO,

within its Indirect Tax practice group for more than seven years.  Mr. Sweeney brought

substantial expertise and business acumen to his role.  In fact, under his leadership, the Indirect

Tax practice group's revenue rose from approximately $300,000 in Fiscal Year 2012 to more

than $7 million in Fiscal Year 2018.  However, everything changed after Mr. Sweeney went on

medical leave for knee replacement surgery and then complained to Human Resources and

senior management about mistreatment by his supervisor, Ms. Bernier, upon his return.  Ms.

Bernier immediately raised her voice and reprimanded Mr. Sweeney for filing a complaint of

discrimination against her.  Only one week later – and after seven years of exemplary

performance – Mr. Sweeney was abruptly fired without any advance notice and without any

proffered justification.  Mr. Sweeney's termination, clearly not based on any legitimate business

rationale, was a blatant decision to retaliate against and get rid of a "complaining" employee.

2.      Defendants' actions constitute unlawful retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(7), New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(7), and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(d), as well as unlawful interference under the FMLA, 29 U.S.C. § 2615(a)(1). Plaintiffs seeks all available declaratory, injunctive and monetary relief.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4.      Pursuant to 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

5.      Plaintiff will file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Following the EEOC's issuance of a Notice of Right to Sue, Mr. Sweeney will seek leave of the Court to further amend the Complaint to add claims under the Americans with Disabilities Act ("ADA").

6.      Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

7.      Plaintiff Dennis Sweeney is a former employee of BDO.   Plaintiff currently resides in New Milford, New Jersey.  At all relevant times, Plaintiff met the definition of "employee" and/or "eligible employee" under all applicable statutes.

8.      Defendant BDO is a Delaware limited liability company with its principal place of business located at 100 Park Avenue, New York, NY 10017.  At all relevant times, BDO met the definition of an "employer" and/or a "covered employer" under all relevant statutes.

9.      Defendant Janet Bernier is Head of BDO's Northeast ("NE") State and Local Tax ("SALT") practice group ("NE SALT").  Ms. Bernier directly supervised Plaintiff at the time of his termination and directly participated in the unlawful and retaliatory conduct to which Plaintiff was subjected.  At all relevant times, Ms. Bernier met the definition of an "employer" and/or a "covered employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

### I.      Mr. Sweeney's Outstanding Performance at BDO

10.      In 2012, Mr. Sweeney joined BDO as a Managing Director and Head of Indirect Tax within the Company's NE SALT practice group.  By then, Mr. Sweeney had spent decades working in high-level positions at some of the largest firms in the country, including KPMG and PricewaterhouseCoopers.

11.      Throughout his employment at BDO, Mr. Sweeney's performance was nothing short of outstanding.  He consistently received excellent performance reviews and substantial year-end bonuses and raises.

12.      In October 2018, Mr. Sweeney received an excellent mid-year performance review from his supervisor, Defendant Janet Bernier, the Head of the NE SALT group.

3

13.     Mr. Sweeney helped grow the Indirect Tax practice group's revenue from approximately $300,000 in Fiscal Year 2012 to more than $7 million in Fiscal Year 2018.

14.     By the end of March 2019, Mr. Sweeney's Indirect Tax group generated about 67% of the entire NE SALT group's yearly revenue to date, despite accounting for only 44% of NE SALT's total clients.

15.     Mr. Sweeney succeeded in building a strong team of tax professionals, as well as expanding the Indirect Tax teams in BDO's Woodbridge, New Jersey, Stamford, Connecticut, and Boston, Massachusetts offices.

16.     Mr. Sweeney personally engaged major companies on behalf of BDO, including Aeropostale and Tiffany & Co., with whom he was able to cross-sell other lines of services offered by BDO, resulting in substantial revenue.

## II.     Disability Discrimination and Retaliation Against Mr. Sweeney

17.     In January 2019, Mr. Sweeney's doctor advised him that he needed to undergo knee replacement surgery.

18.     In January 2019, Mr. Sweeney informed Ms. Bernier that he would need this surgery and a leave of absence to follow.

19.     In response, Ms. Bernier did not express sympathy or support, but instead said in sum and substance, "Oh that's not good – we have goals we need to meet by fiscal year end" (i.e. by the end of June 2019).  Clearly, Ms. Bernier was discontented by Mr. Sweeney's need to take a medical leave of absence at that time.

20.     On February 20, 2019, Mr. Sweeney underwent successful surgery and was out on FMLA medical leave through March 7, 2019.

21.     From March 7, 2019 through March 15, 2019, Mr. Sweeney worked remotely from his home in New Jersey with BDO's approval.

22.     Then, from March 18, 2019 through the date of his termination, Mr. Sweeney worked from BDO's Woodbridge, New Jersey office (he normally worked from its New York City office).

23.     Immediately after Mr. Sweeney returned to work on March 7, 2019, Ms. Bernier began to inundate him with daily emails that scrutinized, questioned and doubted the billing entries for his work.

24.     Ms. Bernier had not subjected Mr. Sweeney to such microscopic supervision at any point prior in his tenure.

25.     Similarly, Ms. Bernier began to inexplicably remove Mr. Sweeney from certain project roles (such as the "Billing Authority" and "Billing Specialist" roles) to which Mr. Sweeney would normally be assigned on certain projects.

26.     Mr. Sweeney was naturally upset at Ms. Bernier's changed demeanor following his medical leave and request for associated accommodations.

27.     On April 3, 2019, Mr. Sweeney called Steve Oldroyd, a fellow Managing Director based in San Jose, California.  Mr. Sweeney complained to Mr. Oldroyd that Ms. Bernier had been harassing him since he returned to work from medical leave.  Mr. Sweeney told Mr. Oldroyd that he felt that Ms. Bernier's behavior towards him had changed because of his medical condition and leave.

28.     In response, Mr. Oldroyd advised Mr. Sweeney to file his complaints with Human Resources ("HR").

29.     Separately, Mr. Oldroyd notified HR about Mr. Sweeney's complaints, and that same day, Amanda Turcotte, an HR representative, contacted Mr. Sweeney.

30.     Mr. Sweeney conveyed to Ms. Turcotte the same complaints he had made about Ms. Bernier's behavior to Mr. Oldroyd.

31.     Ms. Turcotte told Mr. Sweeney that she would need to address his concerns with Rocky Cummings, the National Head of BDO's SALT practice group and Ms. Bernier's manager.

32.     On the next day, April 4, 2019, Ms. Bernier called Mr. Sweeney and it was abundantly clear from the start that she was irate.  Ms. Bernier advised Mr. Sweeney in a harsh tone that she had been "spending all morning fielding calls from the West Coast" in regard to Mr. Sweeney's complaints against her.

33.     Ms. Bernier asked Mr. Sweeney, in an intimidating fashion, "how could you [Mr. Sweeney] do that?"

34.     Ms. Bernier then warned Mr. Sweeney against making further complaints by telling him, in sum and substance, to "keep your head down and focus on doing the things you are good at – selling the products and services of the firm."

35.     Mr. Sweeney acknowledged to Ms. Bernier that he had complained about how she had been harassing him and mistreating him due to his medical condition and having taken medical leave.

36.     About a week later, on April 12, 2019, BDO abruptly and callously terminated Mr. Sweeney's employment.  Specifically, on that day, Tenielle Comerford, Regional HR Director, and Ms. Bernier called Mr. Sweeney to notify him that he was being fired.

37.     Mr. Sweeney pressed for an explanation, and following a long pause, Ms. Comerford vaguely said that "the Firm is going in a different direction, and this is a good time for you to part from the company, thus separate from service."

38.     Ms. Bernier, tellingly, said very little during the call, and did not address why Mr. Sweeney was being fired.

39.     Mr. Sweeney was never given any type of performance warning or placed on a Performance Improvement Plan ("PIP"), even though BDO has placed other employees at his level on these types of notice if there is a concern about performance, thus negating any assertion that Mr. Sweeney was terminated for performance reasons.

40.     Later, on April 12, 2019, Mr. Sweeney spoke with Mr. Cummings, who is Ms. Bernier's supervisor.  When pressed to explain why Mr. Sweeney had been fired, Mr. Cummings said, in sum and substance, "This is a hard one.  I didn't even know about it.  I can't provide any information."

41.     There is and was no legitimate basis for Mr. Sweeney's termination.

42.     After seven years of devotion and commitment to BDO, Mr. Sweeney was fired only one month after he returned from medical leave and only one week after he filed several complaints of discrimination.

## FIRST CAUSE OF ACTION
### (Retaliation in Violation of the FMLA)
### *Against BDO*

43.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

44.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.  Plaintiff, a full-time employee of BDO, at all relevant times worked at

least 1,250 hours in any 12-month period, and specifically, in the 12-month period preceding his termination.

45.     At all times relevant herein, BDO was a "covered employer" within the meaning of the FMLA.  BDO employs 50 or more employees in at least 20 calendar weeks within a 75 mile radius of the Company.

46.     By the actions described above, among others, Defendants have retaliated against Mr. Sweeney for taking FMLA leave.

47.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other relief.

**SECOND CAUSE OF ACTION**
**(Unlawful Interference in Violation of the FMLA)**
***Against BDO***

48.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

49.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA, and BDO was a "covered employer" within the meaning of the FMLA.

50.     By the actions described above, among others, Defendants have unlawfully interfered with Mr. Sweeney right to take FMLA leave by unlawfully terminating his employment a mere few weeks after his return to work following FMLA leave.

51.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm

for which he is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other relief.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
#### *Against All Defendants*

52.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

53.     Defendants retaliated against Plaintiff by, among other things, terminating his employment after he complained about being discriminated against him because of his disability.

54.     As described above, Defendant Bernier aided and abetted the retaliatory conduct committed against Plaintiff.

55.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of damages, to the greatest extent permitted under the law, in addition to reasonable attorneys' fees and expenses.

56.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

57.     BDO's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
### *Against All Defendants*

58.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

59.     Defendants retaliated against Plaintiff by, among other things, terminating his employment after he complained about being discriminated against because of his disability.

60.     As described above, Defendant Bernier aided and abetted the retaliatory conduct committed against Plaintiff.

61.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

62.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

63.     BDO's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NJLAD)
### *Against All Defendants*

64.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

65.     Defendants retaliated against Plaintiff by, among other things, terminating his employment after he complained about being discriminated against because of his disability.

66.     As described above, Defendant Bernier aided and abetted the retaliatory conduct committed against Plaintiff.

67.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

68.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

69.     BDO's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NJLAD for which Plaintiff is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, through the following relief:

A.     A declaratory judgment that the actions of Defendants complained of herein violate the laws of the United States, and States of New York and New Jersey;

B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, emotional pain and suffering and emotional distress;

F.      An award of punitive damages in an amount to be determined at trial;

G.      An award of liquidated damages in an amount to be determined at trial;

H.      An award of attorneys' fees and costs that Plaintiff has incurred in this action to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  August 7, 2019
        New York, New York                    Respectfully submitted,

                                              **WIGDOR LLP**


                                              By: _____
                                                    David E. Gottlieb
                                                    Tanvir H. Rahman

                                              85 Fifth Avenue
                                              New York, NY 10003
                                              Telephone: (212) 257-6800
                                              Facsimile: (212) 257-6845
                                              dgottlieb@wigdorlaw.com
                                              trahman@wigdorlaw.com

                                              *Attorneys for Plaintiff*